Good morning, your honors. May it please the court, my name is Anthony Yusey, and I represent defendant-appellant Antonio Santos. Your honor, what I'd like to do is reserve five minutes for rebuttal, and I will keep track of the time. Your honor, and I also would like to address the issues raised in the opening brief and begin with the first issue and comment on the other issues as I may have time. Your honor, what we are asking is that this court reverse the conviction of Mr. Santos for one count of conspiracy to distribute and to possess with intent to distribute 50 grams or more of methamphetamine and to remand this case to the district court for a new trial. Your honor, we feel that with respect to beginning with the first issue, that there is a real possibility that Mr. Santos may have been convicted by the jury on the basis that the jury used as substantive evidence of Mr. Santos' guilt. The fact and the evidence that five of the government's cooperating witnesses pled guilty to the same conspiracy and that their guilty pleas were entered in evidence along with their plea agreements with the government. Well, did you try the case, sir? No, I did not, your honor. I was appointed just prior to the sentencing in this matter after the trial attorney had been permitted to withdraw, so I handled the sentencing. It's not usual for a prosecutor to show that his witnesses have all pleaded guilty to felonies. When the prosecutor proffered the guilty plea of each of these witnesses, and I suppose he did so as each witness testified, was there any objection by the defense attorney that this was improper direct examination? No, your honor. Did the defense attorney proffer a limiting instruction at that time to be given by the judge as to how the jury should handle the evidence that the witness had been convicted of a felony? No, your honor. Was there any motion to strike the testimony of the guilt of each of the witnesses after the evidence came in? No, your honor. So we're reviewing for clear error? Correct, your honor, for plain error. Plain error. Right. Your honor... What's the plain error? Your honor, the error is that no limiting instruction was given. But none was requested. Is there a corresponding duty on the trial court to give the limiting instruction? Your honor, I would submit that, in this instance, that an instruction, a limiting instruction, should have been given. Oh, you submit. But let me ask you this question directly. There's a book, at least in California, when I was a trial judge, that said, mandatory sui spondi instructions. You have to give, regardless whether anybody asks for them, or else you're committing reversible error. Now, is there any case that says that a limiting instruction regarding the guilt of a witness on direct examination by the prosecutor should be given sui spondi by the judge? There is no case that says it should be given sui spondi by the judge. There is that Halbert case that says that when, and which we rely on, which says that there is a basic principle, basic rule, that when the guilty plea of a cooperating witness being entered into evidence, whether it's being proffered by the prosecution or by the defense, that because of the potential, the real serious potential for misuse of that evidence, that a limiting instruction should be given. Not only should it be given, but it should be given so that the purpose of the evidence, that is, to assess credibility of the witness, is established. But also to clearly, in the Halbert case I think points this out, clearly exclude the possibility that the evidence will be misused for substantive purposes of the defendant's guilt. Now, you know what the problem is, and maybe it isn't a problem. Excuse me, Your Honor? I said maybe it isn't a problem, so you can tell me why it isn't a problem. In this case, the prosecutor didn't just, the counsel didn't just produce this. He did it because there was, the argument was, this is a put-together kind of thing. And so he was saying, no, we'll show this. Wasn't he doing it for a point, to establish the credibility? Your Honor, if I... But to rebut the argument that was being made, that this was not a case. Your Honor, if I understand Your Honor's question, are you speaking of... Well, let me try to make it even clearer. The prosecutor didn't just get up and say, we're trying this guy. Five other people pled guilty. He didn't, and so forth and so on. Hadn't something been said to cause the prosecutor to say, to mention the guilty pleas? Wasn't it a response rather than initiated by the prosecution? Well, Your Honor, there were opening statements by both parties. Is that what Your Honor was referring to in the opening statement? Your Honor, I believe it was referred to in the opening statements. It came up with the first cooperating witness, and it came up at the instance when that first cooperating witness testified in direct examination, and the government's attorney, well, first of all, the evidence of the plea was entered into evidence as a result of a question by the government's attorney, and the witness answered, and then the government offered the plea agreement in evidence. And at that point in the record, we have the fact that the district court judge being sensitive, at least to the fact that now we were speaking about the plea of a cooperating witness and his plea agreement held a colloquy with both the government's attorney and the defense counsel. So at that point, you had not just the defense counsel, not just the government's attorney, aware of the sensitive nature of what was occurring. You had the district court judge on his own, sua sponte, bring up the issue of what was transpiring and whether or not the parties were on agreement on how they were going to proceed, not only with this initial cooperating witness, but with the other four cooperating witnesses that were to come. Now, Judge Ferris, you asked me whether there's a rule or a case law that says sua sponte, a district court judge is required to give a limiting instruction in this instance, even if defense counsel doesn't ask for it. And I don't have a case that says that, although it comes closest. But in this instance, I'm always complimented if I'm confused with Judge Bayer. I'm sorry, Your Honor. I apologize. But Judge Bayer asked me that question. I'm sorry. But the point I was going to make was that, in this instance, the district court judge was sensitive enough to the potential damage, or at least the risk that this evidence raised, to, on his own, sua sponte, initiate a colloquy. Now, it didn't focus on the limiting instruction, but it did focus on the subject of the plea and the plea agreements. So I would posit to this Court that, in the context of this case, the district court judge himself, sua sponte, bringing this issue, that is the plea and the plea agreements, to the attention of both counsels. At that point, I would suggest to the Court that somebody, whether it was the district court judge, whether it was the government's attorney, whether it was the defense counsel, should have also, at that point, brought up the need for a limiting instruction. So in the context of this case, I am suggesting to the Court that, sua sponte, this should have been done by one of the three people, in this case, to assure that Defendant Santos had a fair trial with respect to ensuring that the jury did not use the evidence, this evidence of pleas and plea agreements, as substantive evidence. You have four minutes and a half left. You wanted to say five. Yes, Your Honor, I do. May it please the Court, good morning. Your Honors, Mark Anzio for the United States. Did you try this case? Yes, sir. Okay. Your Honor. What about what was said in the opening statement alluding to the dialogue between Jeff Ferris and Mr. Yusey, that prompted you to proffer the guilty pleas of each of these witnesses, when, in effect, what you were doing was impeaching your own witness and showing that each of these persons were convicted felons? Yes, Your Honor. There was nothing in the opening statement that caused that. That was my plan from the outset. What you wanted to do was take a bite out of it by going forward with the evidence so that it wouldn't come as a surprise to the jurors, right? Correct, Your Honor. Absolutely. You certainly dealt with it in your closing statement. You referred to it again and again and then said, well, they are convicted felons, but no one's disagreed with anything they've said. They haven't contradicted each other. So, again, you made a big point of the fact, did you not, that although they were convicted felons, they all agreed with each other and, therefore, it must be true? Well, the point, again, was to show the credibility. The reason for introducing the plea agreements and discussing it was foremost, as Justice Bey has indicated, to judge Bey. Sorry. Thank you. To draw the sting of the status of the convicted felons. The second was to make sure the jury understood that these witnesses were in a position to have firsthand knowledge and have direct evidence of what they were testifying to, not just that they could testify to it, but how do they know this, and that the jury could then gauge their credibility based on that. So that was the reason for it. At no point at any time in the trial was it ever suggested and further argued that the plea agreements were in any way substantive guilt of Mr. Santos. But there was no jury instruction, was there, that stated in unequivocal language that the guilty pleas of the other witnesses may not be considered as evidence of defendant's guilt. Was this an error by the district court judge to fail to give this instruction? Well, Your Honor, I think it was an error on all the parties' parts that were involved. I mean, certainly in hindsight, in an ideal world, should that instruction have been given, yes. Why it wasn't given, I can't give the court an explanation. Obviously, every other jury instruction that was relevant to that issue was given. Those were jury instructions number 9, 10, 12, and 23, which dealt with accomplices, felony convictions, all those other things. It wasn't given. Now, should that have been done, yes. Was it plain error, which is the standard of a review here, because there was no objection, as the court has pointed out? No, this was not an instance of plain error. The standard on the plain error is that it must seriously affect the fairness, integrity, or public reputation of the proceedings. That's the Olino case. United States v. Fuchs goes further to say that it would be improper to correct, even if there was plain error, where the evidence was overwhelming. And that certainly is what this case was. Not only did we have the five cooperating defendants, who each testified that Antonio Santos was involved in this methamphetamine conspiracy. There was independent corroboration for those witnesses, whether it was drug seizures based on their information, express mail parcels, which were able to be recovered based on what they told us, boxes which were found during search warrants that came from Mr. Santos, and of course, which is largely ignored by the defense in their briefs, the written confession of Mr. Santos. Let's assume we agree with you that the evidence was overwhelming. Let me turn to one other issue because time is limited. You argued in closing that most of us have ancestors that were hardworking immigrants, and it's an insult to compare this drug dealer to them. My question is how is this not an emotional appeal to the jurors' passions rather than just a logical inference from the evidence? And as I read the case law, these emotional appeals are not permitted. It was not a proper statement, Your Honor. And in hindsight, if I had to do it over again, I would not have said that. I obviously went one step too far. My argument was in response to the characterization of Mr. Santos as a, quote, hardworking immigrant, simple man. My response was that the evidence showed that he was not that. In fact, he was heavily involved in this drug conspiracy, and that's what the evidence showed. I should have stopped there. I took it one step further to give an example that I thought the jury could relate to, to what is a hardworking immigrant or an example of that. It was not proper. I regret it. But it does not raise a level of error in this case. It certainly did not cause the jury to convict Mr. Santos because, as I said, the evidence was overwhelming. I appreciate your frankness. Thank you. Thank you. The Tamora case, going back to the jury instruction issue, I would just like to note, I believe controls this case. The Halpert case that the appellant cites is not on point. In that case, the defense objected that there was no jury instruction, and that was overruled, and that is why Halpert turned out the way it is. Tamora, on the other hand, is a case almost identically to ours, where the plea agreements were entered into evidence. There was no objection. The reason for the entry of the plea agreements was, again, to blunt the impeachment of those witnesses. And in that case, of course, it was found that there was no plain error, and that was affirmed. So we would ask that you follow the Tamora case in regard to this issue as well. If there are no other questions, I will stop. Thank you, Your Honor. Your Honor, the reason why the government suggests that the evidence was overwhelming in this case is a bootstrap argument. Basically, the government's case against Mr. Santos turned, in large part, on the testimony of five cooperating witnesses, and each of which testified that they had pled, and the plea agreements were entered into evidence without eliminating instruction. And as I point out in my reply brief, one or two witnesses, such witnesses without eliminating instruction, is damaging. Three or four is near lethal, and five in this instance is fatal. After that, the jury would not consider anything, I suggest to the Court, that Mr. Santos said with respect to his defense and with respect to his explanation of the statement that was entered into evidence by him. So I'm suggesting to the Court that unlike the Tamora case where you had two cooperating witnesses, here you had five cooperating witnesses' plea agreements and pleas being entered into evidence. I would also ---- And you had a typewritten confession. Correct. But my point being that Mr. Santos provided an explanation with respect to that. Now, the jury, at that point, after five cooperating witnesses had testified that they pled guilty to the same conspiracy and the plea agreements were entered into, I suggest that the Court would give Mr. Santos' explanation no credit at all because there were five cooperating witnesses who testified that he was involved in this same conspiracy. And there was no limiting instruction that limited that evidence to just matters of credibility and not a substance of evidence. On the issue of plain error and whether the district court judges sua sponte required to give a limiting instruction, I would ask the Court to consider the Tamora case in which there was no limiting instruction given and the judge did not sua sponte give a limiting instruction. But nevertheless, the Court did consider a plain error argument. Now, the Court discounted that and did not agree, but it pointed this out on page 602 of the Tamora opinion. Quote, The prosecutor did not emphasize the guilty pleas or suggest that they were evidence of Tamora's guilt, close quote, as a reason why there was no plain error. In this instance, I impute no motives to the prosecutors, but I do suggest that his argument to the jury suggested to the jury, even if the prosecutor didn't intend it, that these witnesses, pleas of guilty, the fact that they knew the process, first decided not to speak, then decided to consult with their attorneys, then decided to speak, understanding what they were facing, and then accepted responsibility for their crimes, and then contrasting that to the fact that, as the prosecutor stated, Mr. Santos also knew the process but refused to do it, and therefore the jury would have to do it for them, I think fits into what the Tamora Court distinguished the facts of that case against plain error on. That is, you know, you have to go with what you've got, not suggesting otherwise, but in closing argument, both sides get an opportunity to argue, don't they? Your Honor, they do, and there was a rebuttal, and the government gets a rebuttal, and in the rebuttal, the prosecutor, again, emphasized at least with respect to two of those cooperating witnesses, Mr. Caminos, and then the key witness, Mr. Ranney, that they both had accepted responsibility for their offenses, and at that point, that's the last thing that the jurors heard, reminding them of all the other three witnesses. Was that a proper rebuttal? No, Your Honor, what I'm suggesting is that that's the last word that the jurors heard from any attorney, and the defense counsel had no chance to rebut it. Just because it hurts doesn't mean it's prejudicial. That's correct, Your Honor. That's correct. I'm saying in this instance, though, with five cooperating witnesses, please be. It's prejudicial, but it's not improper. That's clear, isn't it? Whether it rises to the level of plain error, Your Honor. Thank you very much for your argument, counsel. The case of Francis DeSantos is submitted, and that ends our calendar for the day. The court stands in recess until tomorrow at 9 a.m.
judges: Farris, Nelson D. W., Bea